IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CELTIG, LLC,<br><br>          *Plaintiff*,<br>v.<br><br>AARON A. PATEY, *et al.*,<br><br>          *Defendants*. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Case No. 2:17-cv-01086<br><br>District Judge Jill N. Parrish |

## I. INTRODUCTION

On September 26, 2017, Plaintiff Celtig, LLC filed a complaint against Defendants Aaron A. Patey; Evergreen Strategies, LLC; PSD International, LLC ("PSDI"); and Relay Advanced Materials, Inc. ("RAM") (collectively, "Defendants"). Celtig alleged that the court had subject matter jurisdiction based on 28 U.S.C. § 1332(a). That section allows district courts to exercise original jurisdiction when the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

Defendants have moved to dismiss based on lack of subject matter jurisdiction, arguing that the controversy is not between citizens of different states. Specifically, Defendants argue that RAM was a member of Celtig when Celtig commenced this action. According to Defendants, Celtig transferred a 30 percent ownership interest in itself to Evergreen pursuant to an agreement the two entities entered into. Shortly after this, Evergreen supposedly transferred the 30 percent ownership interest to RAM. As an LLC, Celtig is deemed to be a citizen of every state of which its members are citizens. So according to Defendants, Celtig was deemed to be citizen of the states of which RAM was a citizen—Delaware and Utah. If Defendants are correct,

both Celtig and RAM were citizens of the same states at the time of filing, robbing the court of subject matter jurisdiction.

Celtig attacks the foundation of Defendants argument. Celtig concedes that it "agreed" to make Evergreen a member of Celtig. But Celtig argues that neither Evergreen nor RAM actually became a member of Celtig because Celtig did not take the necessary steps under its operating agreement to make Evergreen a member. In short, Celtig contends that it agreed to make Evergreen a member but never actually did. This, according to Celtig, means that neither Evergreen nor RAM was (or is) a member of Celtig. The court agrees, and it has determined that it has jurisdiction based on § 1332(a). Defendants' motion is therefore denied.

## II. BACKGROUND[1]

Celtig commenced this action on September 26, 2017. Celtig is a Tennessee LLC. Exhibit A to Celtig's operating agreement (the "Operating Agreement") shows that it has five members. As of September 26, 2017, four of the members were citizens of Tennessee and one of the members was a citizen of South Carolina.

Aaron Patey is a citizen of Utah. Mr. Patey owned and operated the following entities: Evergreen, PSDI, and RAM. Evergreen is a Nevada LLC, and all of its members are citizens of Utah. PSDI is a Utah LLC, and all of its members are citizens of Utah. RAM is a Delaware corporation, and its principal place of business is in Utah.

On or around March 28, 2017, Celtig and Evergreen executed the "Definitive Agreement." Evergreen promised to, among other things, pre-pay $750,015 to Celtig for the purchase of grapheme—one of the strongest materials on earth. In exchange for this and other

---

[1] The following facts are drawn from Celtig's second amended complaint, Evergreen and RAM's counterclaim and third-party complaint, and the declarations and other documentary evidence that the parties have submitted in connection with this motion.

promises, Celtig agreed to, among other things, "transfer through an appropriate legal instrument a 30.0% voting ownership interest in Celtig to Evergreen, and Evergreen shall become a member of Celtig." Celtig also agreed that it would "amend its Operating Agreement, which Evergreen agrees to join as a voting member."

On May 11, 2017, Celtig proposed to Evergreen an amended Operating Agreement. Celtig requested Evergreen's comments, but Evergreen never responded. To date, Celtig has not amended its Operating Agreement to make Evergreen a member of Celtig, and the five current members of Celtig have not approved the transfer of any membership interest to Evergreen.

In connection with this lawsuit, Celtig seeks, among other things, a declaration that it can rescind its promise to convey a 30 percent ownership interest to Evergreen. In response to Celtig's complaint, Evergreen and RAM filed a counterclaim and third-party complaint. Evergreen and RAM allege that Celtig has breached the Definitive Agreement by, among other things, not transferring to Evergreen the 30 percent ownership interest. Evergreen and RAM seek specific performance of the Definitive Agreement, among other things.

After reviewing the pleadings, the court was concerned that it may lack subject matter jurisdiction. Celtig alleged that the court had jurisdiction based on 28 U.S.C. § 1332(a). But Defendants, in their answer, stated that they were without sufficient information to determine whether the court had jurisdiction, and they denied, without explanation or clarification, various allegations as to the parties' citizenship. Accordingly, the court issued an order to show cause as to why the case should not be dismissed for lack of jurisdiction. Shortly after the court issued the order, Defendants moved to dismiss for lack of subject matter jurisdiction.

### III.  DISCUSSION

Defendants argue that the court lacks subject matter jurisdiction because the controversy is not between "citizens of different states." Defendants contend that Evergreen became a

3

member of Celtig when Celtig agreed to transfer a 30 percent ownership interest to Evergreen. According to Defendants, Evergreen then transferred the 30 percent ownership interest in Celtig to RAM, making RAM a member of Celtig. If either Evergreen or RAM was a member of Celtig when the initial complaint was filed, the controversy would not be between citizens of different states and the court would lack subject matter jurisdiction. But neither Evergreen nor RAM was (or is) a member of Celtig, and the controversy is between citizens of different states. Accordingly, the court has subject matter jurisdiction based on 28 U.S.C. § 1332(a).

### A. MOTION STANDARD

"Since federal courts are courts of limited jurisdiction, there is a presumption against . . . jurisdiction . . . ." *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). Consequently, the party invoking federal jurisdiction bears the burden to show that it exists. *Id.* This burden may be met by presenting "affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999).

### B. DIVERSITY JURISDICTION

Celtig contends that the court has jurisdiction based on § 1332(a). Section 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States." It is undisputed that the amount in controversy exceeds $75,000. But the parties disagree as to whether the controversy is between citizens of different states.

For a controversy to be between "citizens of different states" there must be complete diversity of citizenship (*i.e.*, no plaintiff and no defendant are citizens of the same state). *Wis.*

*Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). For individuals, citizenship is synonymous with domicile. *See Vlandis v. Kline*, 412 U.S. 441, 454 (1973). "[T]he domicile of an individual is his true, fixed and permanent home and place of habitation." *Id.* "It is the place to which, whenever he is absent, he has the intention of returning." *Id.* Corporations, on the other hand, are deemed to be citizens of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(b)(1). Unlike corporations, LLCs are deemed to be citizens of every state in which their members are domiciled. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990); *Siloam Springs Hotel L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015).

It is well established that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). As such, courts must "measure[] all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing." *Id.* at 571. In short, complete diversity must exist when a complaint is filed—it is unaffected by subsequent changes to the parties' citizenship. *Siloam Springs*, 781 F.3d at 1234.

### C. WHETHER THE PARTIES WERE DIVERSE AT THE TIME OF FILING

The citizenship of Defendants at the time of filing is relatively straightforward. Mr. Patey was a citizen of Utah. PSDI, a Utah LLC, was deemed to be a citizen of Utah because its members were all citizens of Utah. Evergreen, a Nevada LLC, was deemed to be a citizen of Utah because its members were all citizens of Utah. And RAM, a Delaware corporation, was deemed to be a citizen of Delaware (because it was incorporated in Delaware) and Utah (because its principal place of business was in Utah). Consequently, Defendants were citizens of Delaware and Utah at the time of filing.

The citizenship of Celtig is more complex. Under the Definitive Agreement, Celtig agreed that it would make Evergreen a member of Celtig. But Celtig never took the necessary steps, such as amending its Operating Agreement, to do so. Celtig has filed with the court its current Operating Agreement: it shows that there are five members of Celtig. Four of the members are citizens of Tennessee, and one of the members is a citizen of South Carolina.

If Evergreen never became a member of Celtig, Evergreen could not have transferred its membership interest to RAM and the controversy would be between citizens of different states: the plaintiff would have been a citizen of Tennessee and South Carolina, and the defendants were citizens of Delaware and Utah. Accordingly, the court must determine whether Evergreen became a member of Celtig even though Celtig failed to take the necessary steps—such as amending its Operating Agreement—to confer a membership interest on Evergreen.

**1. Whether Evergreen Became a Member of Celtig**

"The question of whose citizenship constitutes part of [an] LLC's citizenship is ultimately governed by the law of the state of incorporation." *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651(JPO), 2013 WL 30672, at *2 (S.D.N.Y. Jan. 3, 2013) (citing *CR Holding Co. v. Campbell*, No. 11-2051-JWL, 2011 WL 2357649, at *3 (D. Kan. June 3, 2011)). Consequently, the court looks to law of the state in which Celtig is incorporated—Tennessee—to determine whether Evergreen became a member of Celtig.[2]

Under Tennessee law, a "member" of an LLC is "a person reflected in the required records of an LLC as the owner of some governance rights of a membership interest of the LLC." Tenn. Code Ann. § 48-202-101(26). The required records for an LLC include, among other things:

---

[2] Celtig's Operating Agreement provides that it "shall be construed in accordance with and governed by the laws of the State of Tennessee."

- "A current list of the full name and last-known business, residence, or mailing address of . . . each member . . . ;"

- "Copies of the currently effective operating agreement and/or any agreements concerning classes or series of membership interest;" and

- "A copy of all contribution agreements and contribution allowance agreements . . . ."

Tenn. Code Ann. § 48-228-101(a)(1), (4), (11). A "contribution agreement" is defined as:

a binding agreement between a person and an LLC under which:

(A) The person has an obligation to make a contribution to the LLC in the future; and

(B) The LLC agrees that, if the person makes the specified contribution at the time and in the manner specified for the contribution in the future, the LLC will accept the contribution, and reflect the contribution in the required records.

Tenn. Code Ann. § 48-202-101(9).

"*Except as otherwise provided in the articles or operating agreement after an LLC is formed*, all members must approve the admission of a new person or entity as a member, the interest of such member and the contribution of such member." Tenn. Code. Ann. § 48-232-102(a) (emphasis added). Celtig's Operating Agreement places additional restrictions on the LLC's ability to admit new members, so the Operating Agreement governs the admission of new members. Specifically, the Operating Agreement provides that "[a]ll Members must approve in writing the admission of a new Person or Entity (a 'New Member') as a Member, the interests in the Company to be received by such New Member, and the capital contribution to the Company of such New Member." In short, the Operating Agreement imposes the additional requirement that all existing members consent "in writing."

The Operating Agreement further provides:

> The admission of a New Member shall be effective upon:
>
> (a) The execution of an appropriate amendment to this Agreement by such New Member and the Company (with the execution of such amendment by the Company being deemed to be a certification by the Company that all other Members have approved the admission of the New Members); and
>
> (b) The payment or other delivery to the Company of the capital contribution such New Member has agreed to make to the Company.

In short, an entity becomes a member of Celtig when: (1) the entity delivers to Celtig an agreed-upon capital contribution, and (2) Celtig amends its Operating Agreement to reflect that the entity is now a member of Celtig.[3]

Here, Evergreen never became a member of Celtig because Celtig's Operating Agreement was never amended to make Evergreen a member. Under the plain language of Celtig's Operating Agreement, Evergreen became a member of Celtig only if: (1) Evergreen delivered to Celtig the agreed-upon capital contribution ($750,015.00), and (2) Celtig amended the Operating Agreement to reflect that Evergreen was a member of Celtig. It is undisputed that Evergreen delivered to Celtig the agreed-upon consideration. But it is also undisputed that the Operating Agreement was, for whatever reason, never amended to reflect that Evergreen was a member. As such, Evergreen was never "reflected in the required records of [Celtig] as the owner of some governance rights of a membership interest of [Celtig]." Tenn. Code Ann. § 48-202-101(26).

Defendants attempt to avoid this conclusion. First, Defendants argue that the Definitive Agreement constitutes a "contribution agreement." Second, Defendants argue that the Definitive Agreement, which constitutes a contribution agreement, reflects that Evergreen is "the owner of

---

[3] Section 12.5 provides that the Operating Agreement "may be modified or amended only with the written approval of all members." Section 8.13 provides that "[u]pon the admission of any Member, the Manager shall take steps necessary and appropriate to prepare and cause to be executed an amendment to this Agreement to reflect the admission of such Member."

8

some governance rights of a membership interest of [Celtig]." So according to Defendants, Evergreen is a member of Celtig because Evergreen is reflected in one of Celtig's required records (*i.e.*, the Definitive Agreement) as a member of Celtig. *See* Tenn. Code Ann. § 48-202-101(26) (stating that a "member" is a person reflected in an LLC's "required records" as the owner of a membership interest in the LLC).

The court agrees with Defendants on the first point. The Definitive Agreement is a contribution agreement because it is a binding agreement between Evergreen and Celtig under which: (1) Evergreen had an obligation to make a contribution to Celtig; and (2) Celtig agreed that, if Evergreen made the specified contribution, Celtig would accept the contribution and reflect the contribution in the required records. *See* Tenn. Code Ann. § 48-202-101(9). Because the Definitive Agreement constitutes a "contribution agreement," it is one of Celtig's "required records." *See* Tenn Code Ann. § 48-228-101(a)(11).

But the court disagrees with Defendants on the second point. Although the Definitive Agreement is a required record, it does not reflect that Evergreen is "the owner of some governance rights of a membership interest of [Celtig]." Tenn. Code Ann. § 48-202-101(26). Rather, the Definitive Agreement provides that Celtig, in exchange for Evergreen's capital contribution, would amend its Operating Agreement—also a required record—to make Celtig a member of Evergreen. The Definitive Agreement standing alone, however, does not reflect that Evergreen is "the owner of some governance rights of a membership interest of [Celtig]." The Definitive Agreement merely contemplates that Celtig, after receiving a capital contribution, would take additional steps to confer a membership interest on Evergreen.

Defendants also argue that Evergreen somehow became a member of Celtig because Evergreen transferred to Celtig the agreed-upon capital contribution. Specifically, Defendants

9

argue that Celtig, when it received the agreed-upon capital contribution, was contractually obligated to amend its Operating Agreement to make Evergreen a member. Thus, according to Defendants, it is irrelevant that Celtig never actually amended its Operating Agreement to make Evergreen a member.

But this argument is not persuasive. The plain language of Celtig's Operating Agreement undermines it. Celtig may have breached the Definitive Agreement by failing to amend its Operating Agreement. But the court need not reach that issue at this stage of the proceedings. Whether Celtig breached the Definitive Agreement by failing to amend its Operating Agreement is irrelevant to the question of whether Celtig actually amended its Operating Agreement to make Evergreen a member. And, as noted above, the relevant question is whether Celtig amended its Operating Agreement to make Evergreen a member. Celtig never did, and thus Evergreen never became a member of Celtig.[4]

The Tenth Circuit's decision in *Symes v. Harris*, 472 F.3d 754 (10th Cir. 2006), supports this court's decision. There, the plaintiffs, citizens of the United Kingdom, sought a declaratory judgment that they were part owners of one of the defendants—an LLC. *Id.* at 757. The district court held that it "lacked jurisdiction because the remedy the plaintiffs sought, if granted, would render the plaintiffs part owners of [the LLC], thereby destroying diversity." *Id.* But the Tenth Circuit reversed: although the plaintiffs alleged that they were entitled to an ownership interest in the LLC based on an agreement between the parties, *id.* at 757, "[t]he plaintiffs were not members of [the LLC] when the complaint was filed," *id.* at 759.

---

[4] Defendants, perhaps unwittingly, come to this realization in their reply brief. Specifically, Defendants state that the issue in front of the court is: "whether or not there is diversity where the defendant in a case has paid for a membership interest in the plaintiff of a case, *and is only diverse* due to a failure of the plaintiff to record that paid for membership interest." (emphasis added).

Here, Evergreen is in the same position as the plaintiffs in *Symes*. Evergreen contends that it is entitled to a membership interest in Celtig. But Celtig has not amended its Operating Agreement to make Evergreen a member. Evergreen may become a member of Celtig if it prevails on its claim for specific performance. *See Schott v. Animagic Studios, Inc.*, No. E2003-02287-COA-R3CV, 2004 WL 1813280, at *5 (Tenn. Ct. App. Aug. 16, 2004) (assuming that trial court had equitable power to award plaintiff an ownership interest in the LLC, "notwithstanding the fact that Plaintiff is not reflected in the required records as an owner"). But the remedy Evergreen seeks is irrelevant to the diversity analysis. This court, like the court in *Symes*, analyzes diversity at the time of filing. And neither Evergreen nor RAM was a member of Celtig at the time of filing.[5]

---

[5] A number of district court cases support this conclusion. In *Cumulus Radio Corp. v. Olson*, No. 15-cv-1067, 2015 WL 1110592, at *3 (C.D. Ill. Mar. 10, 2015), the defendants argued that the court lacked subject matter jurisdiction because one of the defendants, an LLC, had a member who was a citizen of Georgia—the same state where the plaintiff, a corporation, had its principal place of business. The court, however, denied the motion because the individual who was supposedly a member of the defendant LLC was not actually a member of the LLC based on the LLC's operating agreement. *Id.* at *4. Under the operating agreement, a membership was effective "only after the new Member has executed and delivered to the Company a subscription and assumption determined by the Company." *Id.* at *3. The individual never executed and delivered the required documents, and therefore the court concluded that the individual was not a member of the LLC. Here, as in *Cumulus Radio*, Celtig and Evergreen did not take the requisite steps to make Evergreen a member of Celtig. Celtig's operating agreement is clear that, absent taking those steps, Evergreen did not become a member of Celtig. In *Altaire Pharmaceuticals, Inc. v. Rose Stone Enterprises*, No. 13-cv-4373 (JFB)(WDW), 2013 WL 623586, at *4 (E.D.N.Y. Dec. 3, 2013), the defendants argued that the court lacked subject matter jurisdiction because the plaintiff was a member of one of the defendants, a California LLC, at time of filing. But the court denied the motion because the plaintiff was not a member of the defendant LLC based on the LLC's operating agreement. *Id.* at *6. The defendants argued that the plaintiff was a member of the defendant LLC because the plaintiff was treated as if it were a member of the LLC, but the court found that this was irrelevant because "California law does not contemplate 'de facto' membership in a limited liability company; rather, membership is determined by virtue of the operating agreement." *Id.* Here, Tennessee law, like California law, instructs the court to look towards an LLC's operating agreement to determine the members of the LLC. And Evergreen is not a member of Celtig based on Tennessee law and Celtig's Operating Agreement. *See also Metalmark Nw., LLC v. Stewart*, Nos. 04-682-KI, Cv 05-1920-KI, 2008 WL 803011, at *3 (D.

*     *     *

Complete diversity existed at the time of filing. Celtig, the plaintiff, was a citizen of Tennessee and South Carolina. Defendants were citizens of Utah and Delaware. Consequently, the court has jurisdiction based on 28 U.S.C. § 1332(a) because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

## IV.     CONCLUSION AND ORDER

For the reasons set forth above, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 51) is DENIED. The court has subject matter jurisdiction based on 28 U.S.C. § 1332(a). The stay imposed on January 19, 2018 is LIFTED.

Signed June 4, 2018

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

Or. Mar. 20, 2008) (looking to the LLC's operating agreement to determine membership of the LLC).